Katherine REAB, Gail Lee Graham, Steven J. Finger, Jr. and Ian Ronalds, individually and on behalf of others similarly situated, Plaintiffs,

v.

ELECTRONIC ARTS, INC. and Origin Systems, Inc., Defendants.

No. CIV. 00–B–1839 (OES).

United States District Court, D. Colorado.

Sept. 24, 2002.

James W. Schmehl, Schmehl & Yowell, PC, Fort Collins, CO, Matthew Vincent Herron, Meisenheimer, Herron & Steele, San Diego, CA, for plaintiffs.

Victor Schachter, Fenwick & West, LLP, Mountain View, CA, for Electronic Arts, Inc.

Bruce Charles Anderson, Stettner, Miller & Cohn, PC, Denver, CO, Daniel J. McCoy, Victor Schachter, Fenwick & West, LLP, Mountain View, CA, for Origin Systems, Inc.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Plaintiffs Katherine Reab, Gail Lee Graham, Steven J. Finger, Jr. and Ian Ronalds (collectively, Plaintiffs) all former or current employees of Defendants Electronic Arts, Inc. (EA) and Origin Systems, Inc. (OSI) (collectively, Defendants) assert claims for violations of the minimum wage and overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, and the Colorado Wage Act, §§ 8–4–101 *et seq.* Plaintiffs move to certify a collective action under 29 U.S.C. § 216(b) on behalf of themselves and all similarly situated former or current employees. After consideration of the motion, briefs and counsel's arguments, I grant the motion to certify an FLSA collective action.

### I.

### Facts

In September 1997, Defendants released for public sale their product "Ultima Online" (UO), a multiplayer on-line fantasy role-playing game in which thousands of players interact simultaneously with each other. Zinser Decl. ¶ 3. UO is composed of several distinct worlds known as "shards." *Id.* at ¶ 5. The shards are computer servers serving a specific geographical area of users located throughout the real world. *Id.*

When the game was first released to the public, Game Masters (GMs), paid employees of Defendants, responded to customer queries concerning the use of the game. The GMs' duties included helping players overcome programming and/or application errors in the game and dealing with cheating players, harassing players, or those who violated the game's Terms of Service. Pltfs. Ex. 2, pp. 13, 15.

Approximately two months after UO was introduced to the public, Defendants initiated a "counselor program." Defendants actively solicited individuals from among their customer base to work in the counselor program. Ex. 1, p. 20. In response, hundreds of customers volunteered to be counselors. The counselors performed customer-service oriented duties including answering questions from customers concerning operation of the product and dealing with customers having problems playing the game. Pltfs. Ex. 2, p. 19. The counselors, who received no pay for the duties they performed, received compensation in the form of a free game account and occasional free items such as caps.

After formation of the counselor program, the GMs became the paid supervisors of the unpaid counselors. As supervisors, the GMs' job duties included making sure there were counselors actively taking calls on each of twenty-four shards. If not, the GMs' role was to provide counselors to take the calls. Pltfs. Ex. 32, doc. 1499. According to Plaintiffs, because the GMs usually were not available twenty-four hours per day, counselors became the equivalent of GMs during times when GMs were not available. *See* Pltfs. Ex. 4, doc. 877.

Until April 1999, the counselor program operated in a "loose fashion," Wood Decl.,

¶ 8, with no consistent or mandatory training or signed contracts or agreements between Defendants and the counselors. *Id.* In April 1999, as the number of persons interested in counselor positions grew, Defendants formally adopted policies and procedures controlling the activities of counselors. Resp. Brief, pp. 4–5. *See* Amended Complaint, Ex. A, Counselor Handbook.

According to the Counselor Handbook, counselor program participants were required to: 1) complete training in order to serve as customer service representatives in connection with Defendants' product; 2) work at least three two-hour shifts per week; 3) sign a Terms of Service Agreement drafted by Defendants, Amended Complaint, Ex. A, p. 39–43; and 4) send Defendants a copy of a picture ID. If counselors missed three of their scheduled shifts without notice or excuse, they were terminated from the counselor program.

The Terms of Service Agreement contained the following:

> These Terms of Service for Counselors is an agreement between you, the applicant ("Counselor"), and Origin Systems, Inc. ("OSI"), of the conditions under which you agree to undertake the task of being a Counselor of OSI's on-line game, Ultima Online ("UO" or "the Game")....
>
> .    .    .    .    .
>
> The Counselor program is a volunteer service organization; we are here to help others when they run into unusual difficulties during the normal course of play. This takes the form of monitoring the Help Request Queue for calls for assistance from subscribers; responding to those calls; determining if the call should be handled immediately by the Counselor or forwarded to a Game Master, and; following up to insure that the subscriber is satisfied that his request has been dealt with.

Ex. 5, p. 36. Defendants reserved and exercised the right to terminate an individual's participation in the counselor program for failure to abide by the Terms of Service Agreement.

After counselor program participants served as counselors for a period of time, they were allowed to apply for other jobs in the counselor program, such as senior counselor, assistant senior counselor, shard lead counselor, and seer or elder.

UO customers relied upon the unpaid counselors as well as the paid GMs to provide customer service. GMs would occasionally transfer calls made to them into the counselor queue. Customers also were encouraged to contact either a GM or a counselor for assistance. According to Plaintiffs, in effect, there was little difference between the duties performed by the paid GMs and the unpaid counselors.

Beginning January 1, 2001, Defendants hired paid personnel to train "shoulder-to-shoulder" with the counselors for approximately five months to learn the duties of the counselor position. These duties were identical to the duties they then performed under the label "advisors" beginning in July, 2001. The paid advisors could not be distinguished by customers from the unpaid counselors. Ex. 2, pp. 50, 61.

On May 7, 2001, the unpaid counselors were "[t]erminated to restructure some of their [Defendants'] support." *See* Ex. 2, p. 36. Thereafter, the paid advisors took over the duties which had initially been performed by paid GMs and then by unpaid participants in the counselor program.

Based on these circumstances, Plaintiffs allege that the counselor program participants were employees of OSI as defined in the FLSA. According to Plaintiffs, Defendants failed to pay and/or paid compensation owed them below the FLSA mandated minimum wage and did not pay overtime to them for the work and labor they performed for Defendants. *See* FLSA §§ 206–07.

## II.

### Law

The Fair Labor Standards Act, 29 U.S.C. § 216(b), provides that:

[a]n action ... may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.*

■ Therefore, I must determine whether Plaintiffs and those they seek to represent are "similarly situated" for purposes of the FLSA claim.

The statute does not define "similarly situated" nor has the Tenth Circuit explained its meaning. In *Bayles v. American Medical Response of Colorado, Inc.,* 950 F.Supp. 1053, 1066–67 (D.Colo.1996), I adopted an *ad hoc* method of determining whether plaintiffs were similarly situated under § 216(b). In particular, I employ the two-step approach to § 216(b) certification adopted by several other courts. First, I must determine whether a collective action should be certified for notice purposes. Then, after discovery is completed and the case is ready for trial, I revisit the issue of certification. *Id; See also Thiessen v. GE Capital Corp.* 267. F.3d 1095, 1105 (10th Cir.2001) (no error in utilizing *ad hoc* approach to determine if plaintiffs were "similarly situated" for purposes of § 216(b)). Plaintiffs have the burden of showing that they are similarly situated to other employees. *Bayles,* 950 F.Supp. at 1067.

■ After discovery has been completed and the case is ready for trial, I make a second determination, utilizing a stricter standard of "similarly situated." *Thiessen,* 267 F.3d at 1102–03 *citing Vaszlavik v. Storage Tech. Corp.,* 175 F.R.D. 672, 678 (D.Colo. 1997). In determining whether plaintiffs are similarly situated after discovery is completed, courts address several factors: (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be

individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made any requisite statutory filings before instituting suit. *Id.*

I must also consider whether certification would serve the purposes and putative benefits of a collective action under § 216. The Supreme Court has identified the main benefits of a collective action under § 216(b):

A collective action allows ... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity.

*Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). I must balance the putative benefits against any prejudice to the defendant and any judicial inefficiencies that may result from allowing plaintiffs to proceed collectively. *Bayles* at 1067.

A. Proposed conditional class definition

1. Participants

Plaintiffs have not proposed a conditional class definition. Their papers suggest inclusion of all participants in Defendants' counselor program including: 1) counselors; 2) senior counselors; 3) assistant senior counselors; 4) seers; and 5) shard lead counselors. Defendants do not dispute that counselors, senior counselors, and assistant senior counselors should be included in any certified class. *See* Response Brief, p. 8. Defendants assert, however, that shard lead counselors should be excluded from the class based on their status as independent contractors. *See id.* It is uncontested that seers were independent contractors. *See id.*

Plaintiffs state that at some point during the counselor program, some counselors were designated shard lead counselors and were hired by Defendant and paid on a contract basis to supervise the counselors in each shard. Opening Brief, p. 7.

■ Based on the plain language of § 216(b), employees rather than independent

**628**

contractors, are entitled to the protection of the FLSA. *See id. See also Baker v. Flint Eng'g & Construc. Co.,* 137 F.3d 1436 (10th Cir.1998). Consequently, as a matter of law, seers and shard lead counselors are excluded from the conditional class. Where some counselors became shard lead counselors on a contract basis, any damages would be limited to the period they served as counselors.

### 2. Pertinent Dates

▇ Plaintiffs contend that the harm for which they seek relief began in September, 1997 when Defendants released the game to the public. Until April 1999, however, the counselor program operated without formal rules, training or written agreements between Defendants and participants in the counselor program. In April, 1999, Defendants formally adopted policies and procedures, formalized the counselor handbook containing rules and regulations, and required the participants to work a minimum number of shifts. Under these circumstances underlying Plaintiffs' allegations that they were Defendants' employees, I find that the alleged harm to Plaintiffs and the putative class began on April 1, 1999. The parties agree that any harm ended on May 7, 2001, when the counselor program was terminated.

The conditional class is defined as follows:

All participants in Defendants' Ultima Online Counselor Program who participated as counselors, senior counselors or assistant senior counselors between April 1, 1999 through May 7, 2001 and were not paid wages and overtime pay pursuant to the Fair Labor Standards Act.

### B. Nature of Certification

▇ In their Reply Brief, Plaintiffs argue for the first time that I should certify this action for trial as well as notice purposes. In their motion, Plaintiffs seek certification for notice purposes only. The Scheduling Order entered in this case characterizes the pending motion as a motion for *conditional* class certification. *See* June 11, 2001 Scheduling Order, p. 4, ¶ 6 (emphasis added). To allow full certification at this point would prejudice Defendants who have not had the opportunity to complete discovery on issues which may impact any motion for decertification. Therefore, I analyze the motion as a motion for conditional certification for notice purposes to which the lower standard for certification applies.

### C. Notice

#### 1. Similarly Situated.

Plaintiffs have made "substantial allegations that the putative class members were together the victims of a single ... plan." *See* Amended Comp. ¶¶ 121–123. In particular, Plaintiffs allege that they and the putative class members were Defendants' employees and received compensation below minimum wage or no compensation from Defendants for the work, labor and services they provided to Defendants.

▇ In response, Defendants argue that "fundamental changes occurred within the Counselor positions, such that this Court cannot conclude that all former Counselors are similarly situated without an examination of the specific details of each Counselor's actual dates." Resp. Brief, p. 7, fn. 8. Assuming there were fundamental changes which altered the nature of Plaintiffs' alleged status as employees to which wages were due, Plaintiffs state that all putative class members working in the same positions during the changes were treated the same. Hence, individual analysis of specific details of each putative class member's position and actual dates worked would only be necessary to calculate wages due such persons. Thus, this issue applies to calculation of damages, not certification. Generally, damages should not be considered in issuing notice. "It is well established that individual questions with respect to damages will not defeat class certification ... unless that issue creates a conflict which goes to the heart of the lawsuit." *Ansoumana v. Gristede's Operating Corp.,* 201

F.R.D. 81 (S.D.N.Y.2001); *In re AM Int'l, Inc. Securities Litigation,* 108 F.R.D. 190, 196 (S.D.N.Y.1985). Defendants have made no showing that individual damages questions create such a conflict.

■ Defendants contend also that Plaintiffs "believed they were volunteers and only later felt that counselors had become what they believed were employees." In *Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 302, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985) the Court stated:

> the purpose of the [FLSA] requires that it be applied even to those who would decline its protections. If an exception to the Act were carved out for employees willing to testify that they performed work "voluntarily," employers might be able to use superior bargaining power to coerce employees to make such assertions or to waive their protections under the [FLSA].

*Id.* Plaintiffs' subjective belief as to their status under the FLSA is irrelevant to the question whether to conditionally certify a class.

## 2. Number of potential opt-in plaintiffs

According to Defendants, when ruling on a collective action conditional certification motion in an FLSA collective action, a court "should satisfy itself that there are other [potential class plaintiffs] who desire to 'opt-in'...." *Dybach v. Florida Dep't. of Corrections,* 942 F.2d 1562, 1567 (11th Cir.1991). Defendants contend, therefore, that as a minimum threshold requirement, Plaintiffs must demonstrate that other potential class members intend to participate before the Court expends its judicial resources.

■ The cited language in *Dybach* is *dicta.* Research fails to reveal any court that has applied this requirement. Moreover, the instruction appears to conflict with United States Supreme Court's position that the Act should be liberally "applied to the furthest reaches consistent with congressional direction." *Alamo,* at 296, 105 S.Ct. 1953, *citing Mitchell v. Lublin, McGaughy & Associates,* 358 U.S. 207, 211, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959).

■ Defendants admit that at least 3,000 putative class members exist. *See* Resp. Brief, p. 4. It is reasonable to assume that some unknown number of these potential class members would opt in to this lawsuit. However, requiring plaintiffs in § 216(b) actions to have some unknown number of persons decide whether to opt in places plaintiffs in the position of communicating with potential litigants without court supervision or guidance, leaving plaintiffs subject to allegations of improper solicitation and "tainting" of the putative class. At this stage of the proceedings, the number of persons who wish to join the action is not a factor I consider in determining whether to grant Plaintiffs' motion to certify.

## 3. Benefits of Conditional Certification

■ In this case, discovery is not complete and is presently stayed pending resolution of this motion. Therefore, significant economies can still be achieved by collective discovery and trial preparation. Moreover, the judicial system benefits by efficient resolution in one proceeding of common issue of law and fact arising from the same alleged activity. *See Hoffmann–La Roche,* 493 U.S. at 170, 110 S.Ct. 482.

Plaintiffs have met their burden to show that they and the putative opt-in class members are similarly situated and the alleged victims of a single plan by Defendants to pay employees less than the compensation due them pursuant to the FLSA. Therefore, Plaintiffs are entitled to conditional certification of the class herein defined for notice purposes only.

## D. Form of Notice

Defendants object to Plaintiffs' proposed form of notice on several grounds.

### a. Opt-in Period

Plaintiffs' initial proposed form of notice provides recipients 90 days to opt-in. How-

ever, the Scheduling Order provides for a 60 day opt-in period. *See* Scheduling Order, p. 8. The parties agree that the opt-in period shall be 60 days.

### b. Retaliation Clause

■ Defendants object to the inclusion of a statement prohibiting retaliation by the Defendants against class members who opt in. According to Defendants, the statement is unnecessary because the counselor program no longer exists, and class members have no relationship, volunteer, employee, contractor or otherwise, with the Defendants.

According to Plaintiffs, all counselor program participants were required to be subscribers to Defendants' online product. Given the number of potential putative class members, it is reasonable to assume many of these persons remain customers of Defendants. In addition, Defendants have created a new program for volunteers, the Companion Program, Wood Depo. at 34:5–37:8, the members of which may or may not be former counselors. Also, Defendants promoted persons from the Counselor Program to paid positions with Defendants and hired some as independent contractors. *Id.* at pp. 72–73. Therefore, there may be some potential class members who remain employed or paid by Defendants.

Retaliation could conceivably include closing opt-in plaintiffs' game subscriptions or terminating their employment. These persons are entitled to know that it is a violation of the FLSA for Defendants to retaliate against them for exercising their right to opt in to the litigation. The statement concerning retaliation will be included in the form of notice.

### c. Obligations of opt-in Plaintiffs

The proposed form of notice informs potential class members that if they opt in, they may be asked to: 1) appear for a deposition in Denver, Colorado; 2) respond to written discovery; and/or 3) appear at a trial in Denver. Inclusion of this information will inform potential opt-in Plaintiffs not only about the nature of this action and their rights, but about their potential obligations. In addition, the proposed form of notice uses precatory rather than mandatory language. Thus, the statement properly informs the potential opt-in plaintiffs of their obligations.

### d. Method of Notice

■ Plaintiffs seek to notify potential opt-in plaintiffs by first class mail, electronic mail and internet website posting. Plaintiffs do not cite any legal authority to support the issuance of notice by electronic means or over the internet.

A certified class must receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2). Potential class members are entitled to receive "accurate and timely notice concerning the pendency of the collective action...." *Hoffmann–La Roche*, 493 U.S. at 170, 110 S.Ct. 482.

According to Defendants, notice to potential opt-in plaintiffs via electronic mail and over a website is not the best notice practicable. Historically, first class mailing has been utilized because it provides a controlled method by which individual notification can be provided through a reliable process which ensures that proper notice is received by the potential class members.

Where it is important to ensure that the most accurate notice possible is provided to the proper audience, notification by first class mail is the preferred method in the unique circumstances of class certification notification. Such a mailing process ensures the integrity of a judicially controlled communication directed to the intended audience.

In contrast, electronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court. Electronic mail heightens the risk that the communication

will be reproduced to large numbers of people who could compromise the integrity of the notice process. In addition, email messages could be forwarded to nonclass members and posted to internet sites with great ease. First class mail ensures, at the outset, that the appropriately targeted audience receives the intended notification and maximizes the integrity of the notice process. Therefore, notice shall be given by means of first-class mail only.

Accordingly, IT IS ORDERED that:

1. Plaintiffs motion to proceed as a collective action pursuant to 29 U.S.C. § 216(b) is GRANTED;

2. the collective action, as defined herein, is certified for notice purposes only;

3. the parties shall file any objections to the attached form of notice and opt-in form within 10 days from the date this Order enters;

4. Defendants SHALL PROVIDE Plaintiffs with the names and last known physical addresses of all individuals in the putative FLSA collective action by October 23, 2002;

5. Defendants SHALL PROVIDE NOTICE by First Class Mail to all putative opt-in Plaintiffs; and

6. the stay of discovery entered April 2, 2002 is hereby LIFTED.

### ATTACHMENT

### NOTICE OF PENDENCY OF COLLECTIVE ACTION LAWSUIT

TO: All participants in the Ultima Online Counselor Program of Origin Systems, Inc., and Electronic Arts, Inc., who performed services as Counselors, Senior Counselors, and Assistant Senior Counselors between April 1, 1999 through May 7, 2001 within Defendants' Ultima Online Counselor Program, and whose services were performed in a State of the United States or the District of Columbia.

RE: Fair Labor Standards Act of 1938, As Amended, 29 U.S.C. § 201, *et seq.*

### *Introduction*

The purpose of this Notice is to: 1) inform you of the existence of a lawsuit in which you are potentially "similarly situated" to the named Plaintiffs; 2) advise you of how your rights may be affected by this lawsuit; and 3) instruct you on the procedure for participating in this lawsuit. This Notice is not an expression by the Court of any opinion as to the merits of any claims or defenses asserted by any party to this action.

### *Description of the Lawsuit*

In October, 2000, Katherine Reab, Steven J. Finger, Jr., Gail Lee Graham, and Ian Ronalds (Plaintiffs) brought this lawsuit against Defendants Electronic Arts, Inc. and Origin Systems, Inc. (Defendants) on behalf of themselves and all other past and present individuals who participated in Defendants' Ultima Online Counselor Program as Counselors, Senior Counselors, or Assistant Senior Counselors from April 1, 1999 through May 7, 2001. Specifically, Plaintiffs allege that they are owed pay at the minimum wage for all hours up to forty (40) hours per week, and pay at one and one-half times the minimum wage for all hours over forty (40) per week in which they participated in the Ultima Online Counselor Program during this time period. Plaintiffs also seek as liquidated damages an amount equal to their unpaid compensation or prejudgment interest and attorneys' fees and costs. The Defendants have denied any wrongdoing or liability and vigorously contest all claims that have been asserted.

### *Composition of the Class*

The named Plaintiffs seek, under their FLSA claim, to sue on behalf of themselves and all other similarly situated participants in Defendants' Ultima Online Counselor Program who participated in the Ultima Online

Counselor Program as counselors, senior counselors, or assistant senior counselors from April 1, 1999 through May 7, 2001.

*Your Right To Participate In The
FLSA Portion Of This Suit*

If you fit the definition above, you may join the FLSA portion of this suit by mailing the "Consent To Become Party Plaintiff" form to Plaintiffs' counsel at the following address:

Schmehl, Yowell & Mackler, P.C.
219 West Magnolia Street
Fort Collins, CO 80521

The form must be sent to Plaintiffs' counsel in sufficient time to have Plaintiffs' counsel file it with the Federal Court on or before _____[date within 60 days after court-approved mailing date]. If you fail to return the "Consent To Become Party Plaintiff" form to Plaintiffs' counsel by _____ for it to be filed with the Federal Court on or before the above deadline, you may [will] not be able to participate in the FLSA portion of this lawsuit.

*Effect Of Joining This Suit*

If you choose to join in the suit, you will be bound by the decision of the court, whether it is favorable or unfavorable.

**If you choose to join in the suit, you may be asked to: 1) appear for a deposition in Denver, Colorado; 2) respond to written discovery; and/or 3) appear at a trial in Denver.**

The attorneys for the class Plaintiffs are being paid on a contingency fee basis, which means that if there is no recovery there will be no attorneys' fee. If the Plaintiffs prevail in this litigation, the attorneys for the class will request that the Court either determine or approve the amount of attorneys' fee and costs they are entitled to receive for their services.

If you return the consent form attached to this Notice, you are agreeing to: 1) designate the class representatives as your agents to make decisions on your behalf concerning this lawsuit; 2) the method and manner of conducting this lawsuit; 3) the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs; and 4) all other matters pertaining to this lawsuit. These decisions and agreements made and entered into by the representative Plaintiffs will be binding on you if you join this lawsuit. However, the Court has retained jurisdiction to determine the reasonableness of any settlement with the Defendants, and any agreement concerning the reasonableness of any attorneys' fees and costs that are to be paid to the Plaintiffs' counsel.

*Legal Effect In Not Joining This Suit*

If you choose not to join in this suit, you will not be affected by any judgment or settlement rendered in the FLSA portion of this lawsuit, whether favorable or unfavorable to the class. If you choose not to join in this lawsuit, you are free to file your own lawsuit under the FLSA, but you will then be responsible for all costs, including counsel fees, associated with your lawsuit.

*No Retaliation Permitted*

Federal Law prohibits the Defendants from discharging you or in any other manner discriminating against you because you have exercised your rights under the FLSA to seek compensation.

*Your Legal Representative If You Join*

If you choose to join this lawsuit and agree to be represented by the named Plaintiffs through their attorneys, your counsel in this action will be:

Schmehl, Yowell & Mackler, P.C.

219 West Magnolia Street

Fort Collins, CO 80521

Meisenheiner, Herron & Steele

550 West C Street, Suite 1760

San Diego, California 92101

*Further Information*

Further information about this Notice, the deadline for filing a "Consent to Become A Party Plaintiff" or questions concerning this lawsuit may be obtained by writing, phoning or e-mailing Plaintiffs' counsel, James Schmehl, at Schmehl, Yowell & Mackler, P.C., at: [TO BE PROVIDED BY COUNSEL], **or Defendants' counsel, Victor Schachter and Daniel McCoy, at Fenwick & West LLP,** (650)494–0600, *vschachter@fenwick.com, dmccoy@fenwick.com.*

## CONSENT TO JOIN PURSUANT TO 29 U.S.C. § 216(b)

TO:   THE CLERK OF COURT AND TO EACH PARTY AND COUNSEL OF RECORD

1. I reside at _____
      Street                              City       State      Zipcode

2. My social security number is _____ .

3. My home telephone number is _____ and my work telephone number is _____ .

4. My current email address is _____ .

5.      I understand that a lawsuit has been brought under the Federal Fair Labor Standards Act. I have read and I understand the notice accompanying this consent. As a former counselor, senior counselor, or assistant senior counselor in the Ultima Online Counselor Program of Origin Systems, Inc./Electronic Arts, Inc., I consent to become an opt-in plaintiff in the lawsuit and I agree to be bound by any judgment of this Court in this lawsuit.

6.      **I served as a counselor, senior counselor and/or assistant senior counselor**

from _____ to _____.

6. [7]  I understand and agree that I designate the class representatives as my agents and understand that I will be bound by the decisions and agreements made by and entered into by said representatives.

7. [8]  I understand that I will be represented by Schmehl, Yowell & Mackler and Meisenheiner, Herron & Steele, P.C., and that this Court has retained jurisdiction to determine the reasonableness of any settlement with the Defendants and any agreement concerning the reasonableness of any attorneys, fees and costs that are to be paid to the plaintiffs' counsel.

_____          _____
Signature                                         Type or Print Name

Date _____