**Andrea KARVALY et al., Plaintiffs,**

v.

**EBAY, INC., et al., Defendants.**

No. 05–CV–1720.

United States District Court,
E.D. New York.

Sept. 6, 2007.

Marina Trubitsky, Marina Trubitsky & Associates, PLLC, New York, NY, for Plaintiff.

Benjamin F. Chapman, Lori R.E. Ploeger, Michael G. Rhodes, Cooley Godward Kronish LLP, San Diego, CA, for Defendants PayPal, Inc. and eBay, Inc.

R. Scott Garley, Mark W. Stoutenburg, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., New York, NY, for Defendant Essex Technology Group.

## MEMORANDUM AND ORDER

GLASSER, Senior District Judge.

The plaintiffs and defendants eBay Inc. and PayPal, Inc., having submitted a revised proposed settlement of this putative class action on March 9, 2007, jointly move pursuant to Federal Rule of Civil Procedure 23(a) ("Rule 23") and 23(b)(3) for an order certifying the proposed settlement class, pursuant to Rule 23(e) for preliminary approval of the proposed settlement agreement, and pursuant to Rule 23(b)(3) for approval of the proposed plan of notice to class members.[1] For

---

1. The case caption is out of date due to the shifting identities of the lead plaintiffs during the pendency of this action. The case was originally captioned *Steele, et al. v. PayPal, Inc., et al.,* in the first Amended Complaint (docket no. 12), which was filed shortly after the case was removed from state court—the "Steele" in question being plaintiff Mike Steele. When the Second Amended Complaint was filed, it contained no reference to Mike Steele, and Andrea Karvaly was the first plaintiff listed in the caption. The Second Amended Complaint also transposed the positions of eBay, Inc., and PayPal Inc., placing eBay as the first defendant named in the caption. However, this Court subsequently accepted the recommendation of Magistrate Judge Pohorelsky to dismiss Ms. Karvaly's claims for failure to prosecute. *See* Order Granting Motion to Dismiss Claims of Plaintiff Andrea Karvaly for Lack of Prosecution, dated June 18, 2007 (docket no. 114). Thus, plaintiff Vincent Farinella—who was not a named plaintiff in the first Amended Complaint—is now apparently the first plaintiff listed in the caption to the Second Amended Complaint who still has active claims against the defendants. For purposes of accurate record-keeping and to avoid the confusion generated by the plaintiffs' game of musical chairs, the Court strongly urges the parties to submit a motion to amend the case caption, pursuant to Federal Rule of Civil Procedure 15, in order to clarify the identity of the remaining parties and the appro-

the reasons stated below, the parties' motions are denied.

## BACKGROUND

### I. Factual Allegations Underlying the Plaintiffs' Claims

The five proposed class representatives [2] are residents of the United States who belong to and represent the class of PayPal account holders who claim to have been damaged by the defendants' actions as alleged in the Second Amended Complaint ("2d Am. Compl."). *See* 2d Am. Compl. ¶¶ 97–129, 158–165. Defendant eBay Inc. ("eBay") is a Delaware corporation with its principal place of business in San Jose, California. eBay does business in New York as an online auction site and marketplace through its website, http://www.ebay.com. *See id.* ¶¶ 15, 32–33. Defendant PayPal, Inc. ("PayPal"), a wholly-owned subsidiary of eBay, is a also a Delaware corporation with its principal place of business in San Jose. PayPal does business in New York as an online payment intermediary through its website, http://www.paypal.com. *See id.* ¶¶ 14, 32–33.[3]

#### A. Alleged Misrepresentations Regarding Chargeback Rights and Unauthorized Access

PayPal's service is a "wildly popular" means of transferring funds in online commerce, both through eBay's online auction site and through other, unrelated sites.2d Am. Compl. ¶ 32. In order to utilize PayPal's services, a prospective user must set up a PayPal account, which requires accepting the standard User Agreement and funding the account either through a credit card or bank account. *See id.* ¶¶ 36–37. One part of the User Agreement states the "Buyer Complaint Policy," which provides that, within 45 days from the day a payment was made through PayPal's system, a buyer may submit a complaint to PayPal informing it of a failed business transaction and requesting reimbursement of the amount transferred to the seller. *See id.* ¶ 39. At all times relevant to the Second Amended Complaint, the User Agreement stated that "[t]he Buyer Protection Policy does not replace or reduce any other consumer rights Users might have, including reversal rights that may be granted by a User's credit card issuer," and that PayPal, as the merchant of record with respect to all credit card transactions, "afford[s] customers the rights and privileges expected of a credit card transaction." [4] *Id.* ¶¶ 40–41.

The plaintiffs allege these representations were misleading, because PayPal does not extend "the rights and privileges expected of a credit card transaction" to users who fund their online transactions through a bank account. The Second Amended Complaint alleges that the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666, provides credit card customers with "chargeback" or "reversal" rights—"rights ... to dispute billing errors that appear on their monthly credit card statements," and that credit card users are entitled under the FCBA "to recall such wrongful charges, although such a recall is not available for customers using their bank accounts or other immediate sources of payment." 2d Am. Compl. ¶ 42. The plaintiffs

---

priate caption. *See United States v. Edwards*, 241 F.R.D. 146 (E.D.N.Y.2007) (Glasser, J.).

**2.** The Second Amended Complaint names a total of nine plaintiffs: Andrea Karvaly, Vincent Farinella, Nanette Aragon, Danielle Schoppe, Christina Siracusa, Jason Etten, George Cesar, Dennis Trubitsky, and Douglas Mashkow. However, the Settlement Agreement identifies only plaintiffs Karvaly, Cesar, Farinella, Aragon, Schoppe, and Siracusa as class representatives. *See* Settlement Agreement ¶ 1.31. As noted in note 1 above, the claims of Ms. Karvaly have been dismissed for failure to prosecute. The Court shall therefore focus its discussion only on the claims and factual allegations that pertain to the remaining proposed class representatives.

**3.** The Second Amended Complaint also asserts claims against Essex Technology Group ("Essex"), and three individuals identified as officers and agents of Essex. *See id.* ¶¶ 16–18, 20–31. However, Essex and its officers are not parties to the proposed settlement, and the Court therefore need not discuss the claims against them for purposes of resolving the pending motions.

**4.** As discussed in greater detail below, PayPal has already made certain changes to its website, purportedly in response to this litigation, that are intended to remedy the alleged misrepresentations at issue here.

further allege that, contrary to PayPal's representation that all PayPal transactions carry the rights and privileges expected of a credit card transaction, PayPal does not extend reversal rights similar to the rights enjoyed by users who fund a PayPal transactions through a credit card to account holders who fund their transactions through a bank account. As a result, PayPal has allegedly denied transaction reversals to users who funded their PayPal account through a bank account, when those users would have been entitled to a chargeback had they funded their PayPal transactions with a credit card. The plaintiffs therefore allege that PayPal's User Agreement "misled the Plaintiffs and plaintiff's class, in believing that they would not be disadvantaged and their lawful interests would not be harmed if they use[d] their bank accounts, instead of credit cards." *Id.* ¶ 78.

In furtherance of its alleged misrepresentations regarding the rights of bank account users vis-à-vis those of credit card users, the plaintiffs also allege that when a transaction was completed, PayPal displayed a "Funding Confirmation message," to all users, including those who funded their transaction via a bank account. The Funding Confirmation message stated, *inter alia,* that user information was kept "safe and secure," and that PayPal guaranteed "100% coverage of any unauthorized use" of PayPal accounts. *Id.* ¶ 79. The plaintiffs allege that the Funding Confirmation message was "intended to induce customers to make their payments by means of bank accounts," and that it "is not part of the User Agreement, and therefore does not give rise to any rights and obligations of the customer, although it misleads the customer into believing that it does." *Id.*

### B. *Alleged Interference with the Rights of Credit Card Holders*

The Second Amended Complaint further alleges that, in addition to fraudulently inducing PayPal account holders to fund their transactions through a bank account rather than a credit card by falsely representing that the same rights and privileges attach to a PayPal transaction regardless of the funding source used, PayPal also engaged in a practice of interfering with the efforts of users who funded their accounts through credit cards to exercise their reversal rights in the event of a failed transaction in two ways. First, the plaintiffs allege that when PayPal users who had funded their transaction with a credit card sought to exercise their chargeback rights with the credit card issuer in response to a failed PayPal transaction, "PayPal generally has terminated the account holder's claim to PayPal," thus forcing credit card users "to choose between either exercising their credit card reversal or 'chargeback' rights, or pursuing their rights under the Buyer Complaint Policy." 2d Am. Compl. ¶ 44. Second, the plaintiffs allege that when credit card users chose to forego their rights under the Buyer Complaint Policy and seek a chargeback from their credit card issuer, PayPal interfered with those users' chargeback applications in some instances. Specifically, the Second Amended Complaint alleges that, prior to the intervention of the New York Attorney General, "account holders who funded PayPal transactions through American Express or Discover credit cards often were denied a chargeback," and that "[t]hese denials generally occurred because ... PayPal disputed the chargeback request with American Express and Discover, who in turn reinstated the original charges...." *Id.* ¶ 46; *see also id.* ¶¶ 84–85. Moreover, in response to American Express and Discover card users' inquiries to PayPal regarding the denial of their chargeback applications, PayPal allegedly "inaccurately described the reasons for these denials by informing account holders that ... '[t]he decision to dispute this charge was made by your credit card issuing bank and not PayPal.'" *Id.* ¶ 47. The plaintiffs argue that this representation was fraudulent because it "inaccurately described to account holders the true reason that their chargeback was denied, in that it minimized the role that [the defendants] played in the process, given that it was PayPal, not the account holder's credit card company acting unilaterally, that had disputed the account holder's chargeback." *Id.* ¶ 48.

The plaintiffs claim that PayPal's course of conduct with respect to its misrepresentations to users who funded their PayPal ac-

counts via bank accounts, its termination of the rights under the Buyer Complaint Policy of users who funded their PayPal accounts with a credit card and subsequently sought to obtain a chargeback from their credit card issuer, *and its active interference with the efforts of American Express and Discover card users to obtain chargebacks from those credit card issuers violate the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C.1962(c),*[5] *and the New York Deceptive Trade Practices Act, N.Y. Gen. Bus. L. § 349,*[6] *and also constitute breach of contract,*[7] *negligence,*[8] *and fraudulent inducement.*[9]

## II. *The Prior PayPal Litigation*

In order to appreciate the context of the present action and the terms of the parties' proposed settlement, it is necessary to discuss a previous class action in the United States District Court for the Northern District of California which, according to the parties, raised substantially the same issues. In 2002, PayPal was named as a defendant in four putative class actions, two of which were consolidated and denominated *In re PayPal Litig.,* No. CV–02–1227–JF (PVT) (the "Prior PayPal Litigation"). On June 11, 2004, the parties entered into a settlement agreement that defined the settlement class as all persons who opened a PayPal account between October 1, 1999, and January 31, 2004. *See* Supplemental Memorandum of Points and Authorities in Support of Joint Motion for Preliminary Approval of Proposed Settlement Between Plaintiffs and Defendants eBay Inc. and PayPal, Inc. (docket no. 93, hereinafter "Supp. Settlement Mem.") Ex. B ("Settlement Agreement in Prior PayPal Litigation") ¶¶ 1.3, 1.6. Pursuant to that settlement, PayPal established a settlement fund of $9.25 million and agreed to the entry of an injunction mandating unspecified equitable relief,[10] in exchange for which the settlement class executed a general release which defined the "Released Claims" as follows:

> any and all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, matured or unmatured, in law or in equity, under existing federal or state law, that arose prior to February 1, 2004 and that were or could have been asserted in the Litigation against the Released Persons, including without limitation, claims under the Electronic Fund Transfer Act, California Business and Professions Code §§ 17200 *et seq.;* the California Consumers Legal Remedies Act, Cal. Civ.Code §§ 1750 *et seq.;* and for PayPal's alleged conversion, breach of the User Agreement or other contract, money had and received, unjust enrichment, and negligence under California law or any other state or federal law arising out of, among other things, PayPal's restrictions or limitations of accounts; PayPal's dispute resolution policies, practices and procedures; PayPal's debit of accounts following the receipt of chargebacks, buyer complaints, reports of unauthorized access or in connection with its Seller Protection Policy or Buyer Protection Policy; PayPal's alleged conversion of funds; and PayPal's compliance with the Electronic Fund Transfer Act, 15 U.S.C. §§ 1693 *et seq.* or any similar legislation arising under the laws of any state.

Settlement Agreement in Prior PayPal Litigation ¶ 1.20. In its order granting preliminary approval to the settlement agreement, the district court ordered that notice be disseminated electronically to all class members for whom PayPal had email addresses, and that a summary notice be published in *USA*

---

5. *See id.* ¶¶ 183–198 (First Cause of Action). The plaintiffs allege a RICO violation against PayPal, but not against eBay.

6. *See id.* ¶¶ 206–211 (Third Cause of Action).

7. *See id.* ¶¶ 227–235 (Sixth Cause of Action).

8. *See id.* ¶¶ 249–252 (Ninth Cause of Action).

9. *See id.* ¶¶ 212–226 (Fourth and Fifth Causes of Action).

10. Paragraph 4.1 of the Settlement Agreement in Prior PayPal Litigation notes that "PayPal will consent to entry of an injunction by the Court in the form attached hereto as Exhibit D." Unfortunately, the parties did not include the attachments to the Settlement Agreement in the Prior PayPal Litigation when submitting that document to the Court, so the Court is unable to determine what the terms of the injunction entered against PayPal in that action were.

*Today, Newsweek,* and *People. See* Supp. Settlement Mem. Ex. C (Order Granting Preliminary Approval of Proposed Settlement in Prior PayPal Litigation) ¶ 7.

Regrettably, the Court is unable to describe the allegations and issues raised in the Prior PayPal Litigation in substantial detail, because, notwithstanding the fact that oral argument on the pending motions made clear that the shadow of the Prior PayPal Litigation looms over the present action and has exerted great influence on settlement negotiations, the parties have not provided the Court with sufficiently detailed information about the issues raised in the prior proceedings.[11] The parties' Memorandum of Points and Authorities in Support of Joint Motion for Preliminary Approval of Proposed Settlement Between Plaintiffs and Defendants eBay Inc. and PayPal, Inc. (docket no. 69, hereinafter "Settlement Mem.") states that the Prior PayPal Litigation "involv[ed], like the instant case, allegations relating to PayPal's User Agreement and policies and procedures for responding to customer chargebacks," and describes the procedural history of the case and the terms of the settlement with no further discussion of the legal or factual issues raised beyond that vague description. Settlement Mem. at 2. Given the Prior PayPal Litigation's apparent significance to the parties' views of this action, the Court directs that, in future filings, the parties shall describe the factual and legal issues involved in that case in more detail, and shall attach any significant documents pertaining to the Prior PayPal Litigation in their entirety, as opposed to the brief excerpts attached to the Supplemental Settlement Memorandum, which are not particularly helpful to the Court's effort to understand this action in the broader context of prior and related litigation.

Notwithstanding the Court's lingering uncertainties regarding the details of the Prior PayPal Litigation, one point that clearly emerged at oral argument is that PayPal believes that all of the claims made in this action are barred by the general release executed by the plaintiff class in the prior action. As shall be seen when the Court examines the terms of the proposed settlement, the parties negotiated the Settlement Agreement in this action in such a way that all class members whose claims arose during the class period of the Prior PayPal Litigation—*i.e.,* prior to February 1, 2004—are not eligible to obtain a share of the proposed Settlement Fund. Thus, while the details about the Prior PayPal Litigation provided by the parties are insubstantial, it is necessary to view this action, and the proposed settlement, in the context of the prior action.

## III. *The Proposed Settlement*

The parties have submitted a proposed Stipulation and Agreement of Settlement ("Settlement Agreement"), filed on March 9, 2007,[12] which would resolve all of the claims pending against eBay and PayPal in this action. The Settlement Agreement defines the class as "all U.S. based PayPal account holders who sent or received a PayPal payment during the Class Period," which is defined as the period from January 1, 2000, through the date the Class Notice is disseminated. Settlement Agreement ¶ 1.3.[13] The

---

11. The district court in the Prior PayPal Litigation issued only one written opinion that is accessible to this Court; *See In re PayPal Litig.,* No. C–02–1227–JF PVT, 2004 WL 2445244 (N.D.Cal. October 13, 2004). That document is a short order regarding class counsel's request for attorneys' fees, and does not discuss the claims or legal issues raised in the Prior PayPal Litigation. The district court also issued one opinion in one of the civil actions that were consolidated into the Prior PayPal Litigation; *see Comb v. PayPal, Inc.,* 218 F.Supp.2d 1165 (N.D.Cal.2002). Based on the recitation of facts in that opinion, the *Comb* case apparently had nothing to do with the issues of reversal rights at issue in this action, but instead involved PayPal's alleged failure to respond adequately to customer complaints and

its practice of freezing accounts without justification and without keeping users informed of ongoing investigations.

12. An earlier version of the Settlement Agreement was filed on October 16, 2006. The parties revised the original version in response to concerns raised by various state Attorneys General that the original agreement might preclude members of the plaintiff class from cooperating with state authorities pursuing actions under state law against the defendants based on the facts underlying this action.

13. The class definition includes some narrow exceptions that do not substantially reduce the breadth of the proposed class: "Excluded from

Settlement Agreement also identifies a key subset of Class Members, denominated the "Eligible Class Members," who are defined as

> all Class Members who funded a PayPal transaction after February 1, 2004, using their bank account: (i) who subsequently requested a reversal of the transaction through PayPal's prevailing Buyer Complaint Policy; (ii) who did not receive a refund equal to or greater than 75 percent of their transaction payment in response to such request from PayPal or their bank; and (iii) who, through the timely submission of a Claim Form under oath, attest to a reasonable and good faith belief that they would have received a full reversal of such payment had they used a valid credit card in their possession at the time of the subject transaction to fund the payment and filed a timely chargeback request with their credit card issuing bank.

Settlement Agreement ¶ 1.12. Notably, the Settlement Agreement does not propose to certify a subclass of Eligible Class Members pursuant to Rule 23(c)(4), to certify separate injunctive and damages classes pursuant to Rule 23(b)(2) and 23(b)(3), or to certify separate 23(b)(3) classes comprised of bank account users and credit card users. It also does not define the victims of PayPal's alleged interference with credit card users' chargeback rights as Eligible Class Members.

The Settlement Agreement provides that, in consideration of the Class Members' release of a broad class of claims purportedly related to this litigation, PayPal will agree to the entry of an injunction mandating certain changes to its website and will create a fund (the "Settlement Fund") through which to compensate some members of the class. After class certification and final approval of the Settlement Agreement, PayPal will contribute $3.5 million to the Settlement Fund, which, after deductions for taxes, administrative costs, attorneys' fees, and expenses, will be used to compensate the Eligible Class Members (*i.e.*, bank account users) by means of a *pro rata* share of the amount they would have received had PayPal permitted them to exercise chargeback rights similar to those expected in a credit card transaction.[14] None of the other Class Members—including individuals who funded their account with a credit card, and were wrongfully denied a chargeback because of PayPal's denial of their rights under the User Agreement or interference with their claim to a credit card issuer—will receive cash compensation in the settlement. They shall instead receive equitable relief in the form of certain "curative disclosures" that have already been made on PayPal's website that would purportedly correct the deficiencies identified in the Second Amended Complaint. Settlement Agreement ¶ 4.2. Specifically, PayPal will:

> [(1)] create a webpage on PayPal's website that summarizes the different statutory rights and remedies available to registered users of PayPal's services ... under prevailing law ... relative to the different

the Class are any judicial officer to whom this Litigation is assigned; PayPal and any of its affiliates; any current or former employees, officers, or directors of PayPal; any Persons currently residing outside of the United States; and all Persons who timely and validly request exclusion from the Class pursuant to the Notice." *Id.*

14. At oral argument, counsel for PayPal estimated the total value of the Eligible Class Members' claims to be between $10 and $20 million, and asserted that each Eligible Class Member could potentially receive 30 to 40 percent of the value of his or her claim through the Settlement Fund. *See* Transcript of Oral Argument, dated April 27, 2007 ("Tr.") at 16–17. Not for the last time, *see* Part II(A), *infra*, the Court is compelled to question defense counsel's mathematical aptitude. From the $3.5 million Settlement Fund, the Settlement Agreement provides that class counsel may seek an award of up to one-third, or approximately $1.17 million. Ignoring the other expenses that must also be paid from the Settlement Fund, that leaves approximately $2.33 million to be paid toward the Eligible Class Members' claims. Even accepting PayPal's most conservative estimate of the value of those claims, $2.33 million is substantially less than 30 percent of $10 million. PayPal's counsel defended his calculations by noting that "[t]he average size of the transaction on the web is pretty small," but whether the $10 million in claims is comprised of a relatively small number of large claims or a relatively large number of small claims makes *no* difference to the calculation of the percentage of the total value of the plaintiffs' claims represented by the amount of the Settlement Fund that will be available to them. Tr. at 17.

types of funding sources that may be used to fund User accounts and the default funding priority that PayPal will apply when Users have more than one funding source on file with PayPal, [ (2) ] give clear and conspicuous notice to Users making a payment via PayPal's website ... of the funding source from which the payment will be made. When Users have more than one funding source on file with PayPal, PayPal will provide those Users with a clear and conspicuous hyperlink to the list of their alternate payment options on file with PayPal so that Users may change the funding source, [and (3) ] [u]nless operating as a credit card issuer, PayPal will not state that PayPal's services give consumers "the rights and privileges expected of a credit card transaction."

*Id.* ¶¶ 4.3–4.5. Thus, only the Eligible Class Members—a very narrow subset of the broadly-defined class—are entitled under the proposed Settlement Agreement to anything more than injunctive relief in the form of various disclosures on PayPal's website.

## DISCUSSION

### I. *Certification of the Settlement Class*

■ The Settlement Agreement purports to "stipulate to the certification of the Class, for settlement purposes only, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure." Settlement Agreement ¶ 3.1. Notwithstanding the parties' willingness to stipulate to the factual requisites necessary for the certification of the class for settlement purposes,[15] "[t]he party seeking certification has the burden of demonstrating that all of the class certification criteria are met," *In re Medical X–Ray Film Antitrust Litig.*, No. 93–CV–5904, 1997 WL 33320580, at *2 (E.D.N.Y. December 26, 1997), and the Court bears an independent responsibility to "make a determination that every Rule 23 requirement is met before certifying a class...." *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir.2006), *reh'g denied*, 483 F.3d 70 (2d Cir.2007). As this Court has recently observed, "[c]ertification

and fairness criteria are important even though the parties have agreed to settle because those criteria were 'designed to protect absentees by blocking unwarranted or overbroad class definitions,' meriting 'heightened attention in the settlement context.' " *Parker v. Time Warner Entm't. Co.*, 239 F.R.D. 318, 328 (E.D.N.Y.2007) (Glasser, J.) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1145 (8th Cir.1999)); *see also Sheppard v. Consolidated Edison Co. of New York, Inc.*, 94–CV–403, 2002 WL 2003206, at *2 (E.D.N.Y. August 1, 2002) ("When considering the propriety of a settlement class, the fact of settlement is 'relevant to class certification' and compels 'heightened' attention to the requirements 'designed to protect absentees by blocking unwarranted or overbroad class definitions.' ") (quoting *Amchem*, 521 U.S. at 612, 117 S.Ct. 2231). That observation is consistent with the Supreme Court's admonition that Rule 23's "[s]ubdivisions (a) and (b) focus court attention on whether a proposed class has sufficient unity so that absent class members can fairly be bound by decisions of class representatives. That dominant concern persists when settlement, rather than trial, is proposed." *Amchem*, 521 U.S. at 621, 117 S.Ct. 2231. The Court must therefore conduct its own "rigorous analysis" of the evidence presented in favor of class certification so as to satisfy itself "that the prerequisites of Rule 23(a) have been met." *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *see also Parker v. Time Warner*, 331 F.3d 13, 22 (2d Cir.2003) (reversing this Court's denial of Rule 23(b)(3) class certification motion where "the District Court decided [the class certification] motion without the factual support necessary to support its legal conclusions . . . .").

Rule 23(a) states that a class action is maintainable only if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the

---

**15.** As the Supreme Court has observed, "[a]mong current applications of Rule 23(b)(3), the 'settlement only' class has become a stock

device." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. If each of the Rule 23(a) factors are met, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem,* 521 U.S. at 614, 117 S.Ct. 2231. The parties here propose certification of the class pursuant to Rule 23(b)(3), which permits a litigant to maintain a class action if the Court "finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." The class may be certified only if the Court determines, by a preponderance of the evidence, that each of the Rule 23(a) and Rule 23(b)(3) factors are met in this case. The Court must evaluate each of these factors individually, even if its examination of the Rule 23 factors overlaps to some extent with the merits of the plaintiffs' claims. *See Initial Public Offering, supra.*

Before discussing the Rule 23 factors individually, it will be useful to address the fundamental flaw in the proposed class certification that cuts across several of the Rule 23 factors as well as the plan of notice and the

proposed settlement that shall be discussed later. As was indicated in the parties' submissions in support of the proposed settlement and made abundantly clear at oral argument, all of the parties to the proposed settlement appear to lack an understanding of the plain meaning of the class definition as it is unambiguously stated in the Settlement Agreement. The parties seem to be laboring under the impression that the proposed settlement class is defined to cover only the group of PayPal users with potential claims based on the facts and practices alleged in the Second Amended Complaint—*i.e.,* individuals who funded a PayPal transaction through a bank account and were unable to obtain a reversal of that transaction when they were dissatisfied—and that the distinction between general Class Members and Eligible Class Members is simply whether the claim arose before or after the end of the class period in the Prior PayPal Litigation.[16] As defined by the clear terms of the Settlement Agreement, the proposed class is much broader than that. As noted above, the Settlement Agreement defines the class as "all U.S. based PayPal account holders who sent or received a PayPal payment during the Class Period," which is defined to be "the period from January 1, 2000, through the date the Class Notice is disseminated."[17]

---

**16.** The parties' misunderstanding of the class definition is illustrated, for example, by the following colloquy between the Court and Michael Rhodes, counsel for PayPal, which took place during oral argument on the pending motions:

THE COURT: What would be the difference between the eligible class members and the class members generally, what difference would there be in terms of those numbers?

MR. RHODES: We negotiated a metric that was based upon 75 percent of the claim not being satisfied.... We said the people that are eligible are people who got less than 75 percent of their transaction fixed on the grounds that if it is that high, it is close enough to the hundred that it is not material, so it is people that had more than that out of their request to charge back....

THE COURT: Am I correct in understanding that the general release which is contemplated by this agreement would be a release given by all class members?

MR. RHODES: Yes, your Honor.

THE COURT: Why would class members who are not eligible be required to give a general release which releases Pay[P]al from claims

which may not at all be related to what it is that has given rise to these allegations?

MR. RHODES: The term "eligible class member" in this context doesn't mean what you're saying. It means you can request money from the fund as opposed to those people who are pre[-]2004 who are getting the benefit of injunctive relief.

Tr. at 11. Mr. Rhodes's responses to the Court's inquiries indicate that he had in mind only the non-Eligible Class Members whose ineligibility results from their claim having accrued prior to February 1, 2004, and not the multitude of individuals who are defined as Class Members under the broad terms of the Settlement Agreement but never filed a chargeback claim with PayPal or a credit card issuer at all.

**17.** Yet another problem with the proposed class definition concerns the inconsistency between the Second Amended Complaint's allegations regarding the effective date of the Buyer Complaint Policy at issue and the inception date of the class as defined in the Settlement Agreement. Paragraph 39 of the Second Amended Complaint states that the Buyer Complaint Policy was incor-

Settlement Agreement ¶¶ 1.3, 1.6. This is a much larger class of individuals than those who experienced a failed transaction or sought to exercise chargeback rights either through PayPal or through a credit card issuer. Counsel for PayPal stated at oral argument that there are "tens of millions of users of Pay[P]al," and it would appear likely that all or nearly all of those located in the United States would qualify as Class Members under the broad definition applied by the Settlement Agreement.[18] Tr. at 8. Yet presumably only a small minority of these individuals have ever sought to exercise the right to reverse a failed transaction, and even fewer have received a refund of less than 75% of the transaction cost.[19] While the parties focus their arguments in favor of approving the proposed settlement on those members of the class who were actually affected by the practices described in the Second Amended Complaint, they fail to acknowledge that the proposed settlement—and the accompanying broad waiver of liability against PayPal which, as discussed below, could be construed to foreclose many types of claims not directly related to the issues presented in the Second Amended Complaint—would affect the rights of many Class Members who have no connection to the acts or omissions underlying the allegations in the Second Amended Complaint at all beyond their status as PayPal users. This failure to consider the scope of the entire class as opposed to the small subset of it with which the parties are actually concerned infects virtually every aspect of the parties' motions and ultimately lies at the heart of the Settlement Agreement's failure to satisfy the Rule 23 factors for class certification, to which the Court now turns.

## A. 23(a) Factors

### 1. Numerosity

■ Rule 23(a) permits the certification of a class action only if "the class is so numerous that joinder of all members is impracticable." "Impracticable does not mean impossible,"[20] however, and "the numerosity requirement is satisfied when joinder of all putative class members would needlessly complicate and hinder efficient resolution of the litigation." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y.1992).

The numerosity requirement is clearly satisfied here. The parties have jointly represented that they estimate the proposed class to be comprised of more than one million members,[21] and have submitted evidence

---

porated into the User Agreement in August 2000; there would therefore appear to be no legitimate reason for extending the class definition to include users who made or received PayPal payments prior to that date.

**18.** The available evidence suggests that the class as defined may be comprised of many tens of millions. Counsel for the plaintiffs attached an eBay press release dated May 4, 2006, to her declaration in support of the present motions which states that PayPal "saw the first quarter of 2006 end with more than 105 million accounts worldwide." Declaration of Marina Trubitsky in Support of Joint Motion for Preliminary Approval of Proposed Settlement Between Plaintiffs and Defendants eBay Inc. and PayPal, Inc. ("Trubitsky Decl."), dated February 12, 2007, Ex. A.

**19.** Accordingly, the majority of the class, as it is presently defined, would appear to lack standing to challenge the practices alleged in the Second Amended Complaint—yet another problematic aspect of the proposed Settlement Agreement, but one that the Court need not examine at length in light of the multitude of other shortcomings which preclude class certification or preliminary approval of the proposed settlement.

**20.** *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993).

**21.** *See* Memorandum of Points and Authorities in Support of Joint Motion for Preliminary Approval of Proposed Settlement Between Plaintiffs and Defendants eBay Inc., and PayPal, Inc. ("Settlement Mem.") at 13 ("counsel for the parties estimat[e] the class members to exceed one million."). The one million figure appears to be the sum of the parties' estimates of the Eligible Class Members and non-Eligible Class Members who have claims based on the allegations stated in the Second Amended Complaint that arose prior to February 1, 2004. Counsel for PayPal implied this calculation at oral argument, explaining that "[m]y client estimates average a million people have gone through the buyer complaint policy, didn't get 100 percent refund." Tr. at 21. As noted above, the parties' apparent mutual misunderstanding of the class definition and the statements at oral argument concerning the "tens of millions" of PayPal users suggest that the number of prospective Class Members may be significantly greater than one million; however, even the parties' more conservative estimate easily meets the numerosity requirement.

suggesting that this estimate is quite conservative.[22] A class of one million members easily satisfies the numerosity requirement. *See, e.g., Medical X–Ray,* 1997 WL 33320580, at *3 (finding numerosity prong satisfied where "the total class size would amount to about 2000 dealers, hospitals, and other direct purchasers that are geographically dispersed across the country."); *In re Indep. Energy Holdings PLC Sec. Litig.,* 210 F.R.D. 476, 479 (S.D.N.Y.2002) (finding numerosity prong satisfied where "thousands of investors engaged in transactions during the Class Period involving the securities that are the subject of this litigation."). Moreover, the Second Circuit has recognized that "numerosity is presumed at a level of 40 members,"[23] and plaintiffs' counsel informs the Court that she has been contacted by approximately sixty prospective Eligible Class Members. *See* Trubitsky Decl. ¶ 5. Thus, even counting only Eligible Class Members, the proposed class is sufficiently numerous to satisfy this aspect of Rule 23(a).

### 2. *Commonality*

■ Rule 23(a)'s commonality requirement "is met if plaintiffs' grievances share a common question of law or of fact." *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997) (per curiam).[24] This requirement "is usually a minimal burden for a party to shoulder," *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.,* 211 F.R.D. 228, 231 (S.D.N.Y.

2002) in large part because it "does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrants class treatment." *Kamean v. Local 363, Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 109 F.R.D. 391, 394 (S.D.N.Y.1986). However, the common issues must be expressed with a degree of particularity and specificity in order to satisfy this requirement, because "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." *Lewis Tree Serv.,* 211 F.R.D. at 232 (commonality requirement not satisfied where plaintiff "has merely construed the factual basis of each class member's claim in the most general fashion ... [and] has not alleged that [the] products [at issue], and their multiple versions, were similar in any respect, beyond the fact that they all purportedly contained Y2K defects and were telecommunications products.") (quoting *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 397 (6th Cir.1998)).

In this case, all of the Class Members set up and used PayPal accounts pursuant to a User Agreement that allegedly misrepresented the rights and obligations that PayPal would recognize in the event of a disputed transaction. Although the parties' characterization of the issues common to all class members is clearly inaccurate on the basis of

**22.** For example, in the Prior PayPal Litigation, PayPal submitted a Declaration of Mary–Ragan MacGill in Support of Motion for Preliminary Approval of Settlement Agreement ("MacGill Decl."), dated June 22, 2004, which is attached as Exhibit E to the Supplemental Settlement Memorandum in this case. Ms. MacGill, a Marketing Director for PayPal, attests that as of June 2004, PayPal had approximately 45 million users worldwide. MacGill Decl. ¶ 5; *see also* Trubitsky Decl. Ex. A. (noting 105 million PayPal account holders worldwide as of first quarter 2006).

**23.** *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995) (citing 1 *Newberg On Class Actions* 2d (1985 Ed.) § 3.05); *see also Robidoux,* 987 F.2d at 935 (citing *Newberg*); *Indep. Energy Holdings,* 210 F.R.D. at 479 ("While precise calculation of the number of class members is not required, numbers in excess of forty generally satisfy the requirement.") (citations omitted).

**24.** The *Marisol A.* court observed that in some cases, "[t]he commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Id.; see also Parker,* 239 F.R.D. at 329 (noting that "the commonality and typicality requirements 'tend to merge, because [b]oth serve as guideposts for determining whether ... the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.' ") (quoting *Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 291 (2d Cir.1999)). The Court addresses these requirements separately here, however, because the nature of the proposed class makes it possible to conceptually distinguish the issue of the commonality of issues of law and fact among the proposed class, which is satisfied here, from that of the requisite typicality of the representative plaintiffs' claims—which, as is discussed at further length below, is not satisfied.

the plaintiffs' allegations,[25] the issues presented in this case are nevertheless sufficiently common to all class members to meet the "minimal burden" imposed by Rule 23(a)(2), as a brief survey of the relevant case law illustrates. For example, in *Kamean*, a case involving a dispute regarding wages and wage benefits between a group of employees and their union, the district court held that the proposed class of employees satisfied the commonality prong where "[e]ach potential class member is or was a member of Local 363; each was employed by a company that had signed a collective bargaining agreement with the union; and each was subject to the same payment practices that plaintiffs now contend were improper." 109 F.R.D. at 394. In *Parker*, this Court held that the commonality prong was satisfied where "[t]he claims are derived from the same legal theory and are based upon the same factual question—whether class members were injured by Time Warner's disclosure of their [personally identifiable information] without properly notifying them of that practice." 239 F.R.D. at 329. Although, as discussed below, the significant differences in the nature of the claims held by different groups of Class Members preclude class certification pursuant to Rule 23(b)(3)'s predominance prong, these commonalities are sufficient to satisfy Rule 23(a)(2)'s more lenient commonality requirement.

### 3. *Typicality*

 Like commonality, the typicality prong of Rule 23(a) sets a relatively low threshold, in that it does not require that "the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact 'occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Caridad*, 191 F.3d at 293

(quoting *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y.1995)). The typicality prong is not without effect, however, as it is well settled that "[n]o matter how capable their attorneys, no matter how great their financial resources, no matter how convinced the court is of their vigor and good faith, the named plaintiffs cannot sue on behalf of the class unless they possess claims typical of the class." *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 17 n. 6 (2d Cir.1981) (Friendly, J.); *see also Kamean*, 109 F.R.D. at 394 (in order to satisfy the typicality requirement, "the plaintiffs must show that their interests are aligned with the interests of their fellow class members in order to ensure that each claim will be prosecuted with diligence and care."). The typicality requirement is generally satisfied "[a]s long as plaintiffs assert ... that defendants committed the same wrongful acts in the same manner against all members of te [sic] class." *Medical X–Ray*, 1997 WL 33320580, at *4 (quoting *In re Prudential Sec. Inc. Limited Partnerships Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y.1995)). Typicality does not require that the representative plaintiffs' claims be factually identical to all other class members; "[n]evertheless, [their] claims must still share 'the same essential characteristics as the claims of the class at large.'" *Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir.2004) (quoting *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985)); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998) ("Under [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.").

The proposed class representatives lack the necessary typicality because, while the great majority of Class Members stand to receive only equitable relief in the form of

---

25. The parties argue that the commonality prong is satisfied because "Plaintiffs have alleged that all of [the Class Members] have had accounts with PayPal; won the auctions for their particular products on eBay; financed their purchases via PayPal; and have either never received their items or received the products in defective or seriously damaged condition." Supp. Mem. at 8. As discussed in Part I(B)(1) below, this is a

mischaracterization of the Plaintiffs' allegations, which do *not* assert that all, or even a majority, of the Class Members used their PayPal accounts to transact business on eBay, or were dissatisfied with the results of such a transaction. The parties' description of the purportedly common issues actually applies only to the Eligible Class Members, who, as previously noted, are a small portion of the entire class.

alterations to PayPal's website, each of the named plaintiffs is a member of the much smaller group of Eligible Class Members who stand to gain a share of the Settlement Fund. As discussed at greater length in Part III(B) below, the primary effect of certifying the broadly-defined class that the parties propose would be to facilitate the execution of an expansive general release that would potentially extinguish many claims unrelated to the claims alleged in the Second Amended Complaint, held by individuals who stand to gain nothing more than "injunctive relief" in the form of some minor modifications to Pay-Pal's website in the present action. The claims of a small group of individuals who hope to settle their claims for a share of a $3.5 million settlement can hardly be said to share the "same essential characteristics" as those of a much larger group who can expect to receive nothing of significant value, yet must, if the proposed settlement were approved, surrender their own rights to sue the defendants for a wide range of offenses that are not directly related to the claims asserted in this action. Although it is true in general that "[d]ifferences in the damages sustained by individual class members does not preclude a showing of typicality, nor defeat class certification," the fact that all of the Class Members who are not Eligible Class Members are denied the prospect of receiving any form of compensatory relief creates a categorical distinction between the two groups such that it would be inappropriate to permit the Eligible Class Members to speak for the millions of general Class Members who might be required to forego their own unrelated claims against PayPal by the terms of the Settlement Agreement. *In re Playmobil Antitrust Litigation*, 35 F.Supp.2d 231, 242 (E.D.N.Y.1998). *See, e.g., Southern States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 88 (D.Mass.2007) (organization that sought only injunctive relief did not meet typicality requirement so as to serve as representative plaintiff for class seeking money damages).

### 4. Adequacy

The "adequacy of representation" prong requires that the named plaintiffs "have typical claims, have no interests antag-onistic to class members, and be required to make the same showing as the absent class members to establish defendants' liability." *In re Western Union Money Transfer Litig.*, No. CV–01–0335, 2004 WL 3709932, at *15 (E.D.N.Y. October 19, 2004). Having determined that the proposed class representatives' claims are not typical of the larger class, it therefore follows that the proposed class representatives are incapable of adequately representing the interests of the proposed class. Thus, the proposed class also fails to satisfy this factor.

### B. 23(b)(3) Factors

Assuming the Rule 23(a) factors are satisfied, Rule 23(b)(3) permits the certification of a class action only if the Court determines that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3) was adopted for the purpose of permitting class litigation in "those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed.R.Civ.P. 23, Advisory Committee Notes to 1966 Amendment. The fact that the motion for class certification is being made for purposes of settlement is "relevant" to the Court's analysis of the Rule 23(b)(3) factors, as the strictures of Rule 23(b)(3) that are "designed to protect absentees by blocking unwarranted or overbroad class definitions [ ] demand undiluted—even heightened—attention in the settlement context." *Amchem*, 521 U.S. at 620, 117 S.Ct. 2231. Although the Court need not comment on the Rule 23(b)(3) factors because it has determined that the Rule 23(a) factors are not satisfied by the class as presently defined, it nevertheless does so for the purpose of pointing out the problems with the proposed class definition that further support its conclusion that the class as defined cannot be certified pursuant to Rule 23.

### 1. Predominance of Common Issues of Law and Fact

■ As a general matter, the "Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir.2006) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir.2001)); *see also Amchem*, 521 U.S. at 623, 117 S.Ct. 2231 (same). The Second Circuit has held that "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir.2002). The predominance inquiry is therefore related to the commonality and typicality prongs of Rule 23(a), but it "is a more demanding criterion than the commonality inquiry under Rule 23(a)." *Id.; see also* 7A Wright, Miller & Kane, *Federal Practice & Procedure: Civil 3d* § 1763 (2005) ("predominance obviously is a more stringent standard than that prescribed by Rule 23(a)(2)...."). While the fact of settlement is relevant to the Court's analysis, the predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231.

Although the proposed class is sufficiently cohesive to satisfy the commonality requirement of Rule 23(a), the class members are not sufficiently similarly situated to satisfy the more stringent requirement of Rule 23(b)(3)'s predominance prong. The fundamental flaw of the proposed class lies in the great divide between the relatively few Eligible Class Members and the far more numerous general (*i.e.*, non-Eligible) Class Members. Essentially, the parties seek to certify a class of millions of individuals on the basis of facts and claims common to only a much smaller group. The parties' brief in support of class certification illustrates this clearly, arguing that the predominance prong is satisfied in this case because

> all of the class members are PayPal account holders who attempted to purchase goods ... on eBay and finance their transactions via PayPal. All of the class members have developed disputes with PayPal due to their dissatisfaction with the products received. Furthermore, all of the class members attempted to dispute their failed transactions with PayPal, but to no avail. Their claims were ignored, declined (often without any explanation), or resulted in insufficient reimbursement.

Supp. Mem. at 13–14. This characterization of the purportedly "common" issues of fact is clearly erroneous, however, because—as the parties conveniently forget—it is *not* the case that all, or even a majority, of Class Members: 1) used their PayPal account to finance the purchase of products over eBay,[26] 2) were dissatisfied with the transaction, 3) attempted to dispute the transaction with PayPal, or 4) failed to obtain a satisfactory resolution to any such dispute. Those issues are common only to the Eligible Class Members, whose claims comprise the essential substance of this action, but who nevertheless constitute only a small minority of the class as it is defined in the Settlement Agreement. It is not necessarily the case that any of these statements are true for any Class Member who is not an Eligible Class Member; conversely, except for Class Members who are not Eligible Class Members because their claims arose prior to February 1, 2004, it *is* necessarily the case that at least one of the above statements is false for each non-Eligible Class Member (else that Class Member would be an Eligible Class Member).

In *Amchem*, the Supreme Court held that Rule 23(b)(3)'s predominance requirement was not met by the fact that the purported class members had all been exposed to asbes-

---

**26.** As noted above, the Settlement Agreement defines the class as "all U.S. based PayPal account holders who sent or received a PayPal payment during the Class Period." Settlement Agreement ¶ 1.3. This definition does not limit the proposed class to those individuals who made or received payment specifically in connection with an eBay transaction as opposed to the multitude of other commercial websites that accept payment via PayPal.

tos products supplied by the defendants, where the class members "were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods." 521 U.S. at 624, 117 S.Ct. 2231 (quoting *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 626 (3d Cir.1996)). Likewise, here, the predominance prong is not satisfied by the fact that all of the Class Members have accepted PayPal's allegedly misleading User Agreement, when a small minority of the Class Members' claims have ripened into claims for actual damages against PayPal that involve a number of factual and legal issues that are not common to the majority of Class Members.[27] While it is true that the *Amchem* Court noted in passing that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws," 521 U.S. at 625, 117 S.Ct. 2231 (citing Fed. R.Civ.P. 23, Advisory Committee Notes to the 1966 Amendment ("a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action")), this Court does not interpret *Amchem* or the Advisory Committee's Notes to suggest that the predominance test is satisfied where the parties seek to certify a Rule 23(b)(3) class of millions of individuals who have suffered no actual injury from the defendant's allegedly fraudulent acts on the basis of a much smaller group of persons who have sustained such injury. Thus, the proposed class does not satisfy the predominance prong of Rule 23(b)(3).

### 2. *Superiority of Class Action*

Where common questions of law and fact predominate over individual issues, Rule 23 further requires the Court to determine "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This analysis requires an examination of the following factors:

(A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating litigation in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Rule 23(b)(3). The Supreme Court has held, however, that when entertaining a motion for certification of a settlement class, as opposed to a litigation class, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620, 117 S.Ct. 2231.

Putting aside the various deficiencies in the proposed class that render certification inappropriate under the other Rule 23 factors, the "superiority" prong of Rule 23(b)(3) would not, in itself, be an impediment to class certification. The interests of the class members in individually controlling the prosecution of this case appear to be minimal. The parties have represented that few, if any, of the individual Eligible Class Members may expect a recovery large enough to justify an individual action, and that no other litigation addressing the claims raised in the Second Amended Complaint has been filed. *See* Settlement Mem. at 15. Furthermore, there is no apparent reason why concentrating the plaintiffs' claims in this forum would be undesirable.

### II. *Preliminary Approval of the Settlement Agreement*

After certifying a settlement class under Rule 23(a) and 23(b)(3), Rule

---

27. While the Court's analysis focuses on the divide between Eligible Class Members and Class Members who currently hold no cognizable claim for money damages against eBay and PayPal based on the allegations in the Second Amended Complaint, it is also noteworthy that the PayPal account holders who funded their accounts with credit cards rather than bank accounts and were subsequently denied reversals under either the Buyer Complaint Policy or their credit card issuer's chargeback policy—who are excluded from sharing in the Settlement Fund but who arguably do have valid claims for damages against PayPal—base their claims on materially different underlying facts and legal theories, such that the Court is left in doubt whether common issues can be said to "predominate" between the claims of bank account users and credit card users.

23(e)(1)(A) requires the Court to "approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." The purpose of the Court's inquiry under Rule 23(e) is to "protect[ ] unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise," *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231 (citation omitted), and approval should generally be granted where the court determines that the proposed settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir.2000). However, the Second Circuit has held that "[w]hen a settlement is negotiated prior to class certification ... it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir.2001) (citing *County of Suffolk v. Long Island Lighting*, 907 F.2d 1295, 1323 (2d Cir.1990)). In the context of a motion for preliminary approval of a class action settlement, the standards are not so stringent as those applied when the parties seek final approval. "Preliminary approval of settlements should be given if the settlement is the result of serious, informed and non-collusive negotiations and the proposed settlement has no obvious deficiencies, such as giving preferential treatment to class representatives, or granting excessive attorneys fees." *Medical X–Ray*, 1997 WL 33320580, at *6 (citing *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y.1997)). Although the Court has determined that the class, as defined in the Settlement Agreement, cannot be certified under Rule 23(a) and (b), it nevertheless will address several "obvious deficiencies" of the proposed Settlement Agreement that would preclude the Court from granting preliminary approval to the settlement in its current form, even if the class were certifiable.

### A. Attorneys' Fees

The Settlement Agreement does not provide for a specific amount of attorneys' fees for class counsel, but indicates that counsel will submit a fee application for an award of fees "in an amount up to one-third of the Settlement Fund ... (*i.e.*, $1,500,000)." Settlement Agreement ¶ 4.13. A maximum fee of one-third of the Settlement Fund is a bit on the high side of a reasonable fee in the class action context,[28] and the Court reserves judgment as to the fairness of the proposed award until class counsel has submitted its fee application. Putting that issue aside, however, it is quite obvious that one-third of $3.5 million is not $1.5 million; it is $1,166,666.67. The Settlement Agreement as currently drafted misstates the amount of plaintiff's counsel's potential award by approximately $333,000.[29] This is unacceptable even at the preliminary approval stage.

### B. Insufficient Information Regarding Attorney General Settlements and Consideration for Non–Eligible Class Members

In their submissions in support of the pending motions and at oral argument, the parties represented to the Court that they structured the settlement agreement in such a manner as to provide no pecuniary relief to Class Members whose claims arose prior to February 1, 2004, because those claims are arguably barred by the general release exe-

---

**28.** For example, in the Prior PayPal Litigation, Judge Fogel found that a fee of $3,332,500 was reasonable for class counsel, where the litigation resulted in the creation of a $9.25 million settlement fund and the return by PayPal of $5.1 million in previously restricted funds. *See In re PayPal Litig.*, No. C–02–1227–JF PVT, 2004 WL 2445244 (N.D.Cal. Oct. 13, 2004); *see also Sheppard*, 2002 WL 2003206, at *7(approving class counsel fee request that "constitutes approximately 12.9% of the total settlement."); *Visa Check*, 297 F.Supp.2d at 525 n. 33 (citing seven cases awarding a range of attorneys' fees from 22.6% to 34% of the recovery to class counsel).

**29.** Curiously, the proposed notice to prospective class members also indicates that class counsel may be awarded up to "one-third" of the Settlement Fund, but neglects to include the Settlement Agreement's parenthetical elaboration. The Court will give the parties the benefit of the doubt by assuming that they do not actually intend to permit the plaintiffs' counsel to seek fees in the amount of up to approximately 43% of the Settlement Fund. Such a percentage would clearly be excessive, and would be denied on that basis.

cuted in the Prior PayPal Litigation. Instead, the non-Eligible Class Members would receive only equitable relief in the form of curative alterations to PayPal's website which would purportedly eliminate confusion and offer users a clear choice as to which funding source to use for a specific transaction, and will no longer represent that PayPal transactions provide the same rights and privileges expected of a credit card transaction. At oral argument, counsel for PayPal acknowledged that the contemplated changes had already been implemented on PayPal's website, but resisted the Court's suggestion that the proposed injunctive relief is now moot for that reason, arguing that the changes to PayPal's website constitute valid consideration for the proposed settlement because "the germ of those changes traces itself back to the beginning of this lawsuit." Tr. at 7–8.

The Court does not intend to pursue further the concerns it expressed at oral argument regarding whether the changes to PayPal's website, having been implemented prior to final approval of the settlement, might be invalid consideration for the general release contemplated by the Settlement Agreement. Nevertheless, it remains concerned that the proposed changes to PayPal's website may be insufficient as consideration for the proposed settlement for a separate, but related, reason. The parties' submissions and their statements at oral argument reveal that, in addition to the private plaintiffs in the Prior PayPal Litigation, the Attorneys General of several states filed a complaint against PayPal apparently arising from the same practices at issue in the Prior PayPal Litigation and in this action, but provide very little substantive detail about that action.[30] In her declaration in support of the pending motions, counsel for the plaintiffs attached a press release, dated September 29, 2006, and entitled "PayPal Settles Customer Service Complaints," which announced the settlement of a consumer complaint filed by the Attorneys General of 28 states. *See* Trubitsky Decl. Ex. B. The press release indicates that, as part of the settlement, PayPal "will shorten and streamline its user agreement and provide more information about its protection programs." Although the Court has no more detailed information regarding the specifics of PayPal's settlement with the states, it notes that the changes described in the press release sound remarkably similar to those proposed as equitable relief in this lawsuit, which raises the possibility that PayPal may already be legally obligated to make the proposed changes pursuant to its settlement with the state Attorneys General. It is a fundamental tenet of contract law that "[a] promise to perform an existing legal obligation is not valid consideration to provide a basis for a contract." *Goncalves v. Regent Int'l Hotels, Ltd.*, 58 N.Y.2d 206, 220, 460 N.Y.S.2d 750, 447 N.E.2d 693 (1983); *see also Care Travel Co., Ltd. v. Pan American World Airways, Inc.*, 944 F.2d 983, 990 (2d Cir.1991); *Restatement (Second) of Contracts* § 73 (1981). Thus, if PayPal is already under an obligation to make the changes to its website that are contemplated by the Settlement Agreement, its performance of that pre-existing duty cannot constitute consideration for the non-Eligible Class Members' execution of the general release.[31] Because the Court lacks sufficient information about the terms of PayPal's settlement with the state Attorneys General to make an informed judgment on this point at the moment, it directs the parties to provide sufficient information about the terms of PayPal's settlement with the state Attorneys General in any revised settlement proposal to enable the Court to determine if the proposed equi-

---

**30.** The Second Amended Complaint refers briefly to an investigation into PayPal's practices by the New York Attorney General. *See* 2d Am. Compl. ¶¶ 84–87 (section headed "New York Attorney General's Investigation."). However, aside from a passing reference to "recent agreements with the Attorney General," that section includes no detail whatsoever about the substance or outcome of the investigation, and does not mention the investigations undertaken or complaints filed by the other states' Attorneys General that are mentioned in passing in subsequent filings and at oral argument. *Id.* ¶ 85.

**31.** Of course, if PayPal is already under a legal obligation to remedy whatever injury the non-Eligible Class Members can be said to have suffered, it would appear that the claims of the non-Eligible Class Members should be voluntarily withdrawn as moot.

table relief is valid consideration for the non-Eligible Class Members.

### C. *Release of Liability*

The Court's most serious concern with the terms of the proposed settlement is the unduly broad general release that the parties seek to impose upon all Class Members as a condition of this settlement. The Settlement Agreement defines "Released Claims" as follows:

> any and all claims for payment of any kind and any and all liabilities, demands, obligations, losses, actions, causes of action, damages, costs, expenses, attorneys' fees and any and all other claims of any nature whatsoever, arising from or relating to any of the allegations or statements made in, or in connection with, the Litigation (and including, without limitation, any and all claims based upon any of the laws, regulations, statutes, or rules cited, evidenced and referenced by all such allegations and statements) or any civil claims arising out of any State Attorney General's report that has been concluded and published prior to the date of this Settlement involving the same or substantially similar matters, including, without limitation (and by way of example only): PayPal's alleged failure to reimburse a buyer in connection with a purchase of goods or services via PayPal, where the buyer was subsequently unsatisfied with the goods or services (whether for non-receipt or any other reason); and PayPal's alleged conversion, breach of the PayPal or eBay User Agreements or other contract, money had and received, unjust enrichment, fraudulent misstatements or omissions, or negligence under any state or federal law arising out of, among other things, PayPal's limitation of accounts, PayPal's dispute resolution policies, practices and procedures, PayPal's handling of buyer complaints, refund requests, chargeback disputes, reports of unauthorized access, or in connection with PayPal or eBay's Seller Protection Policy or Buyer Protection Policy, or PayPal's compliance with the Electronic Fund Transfer Act or any similar or comparable legislation un-

der state law. "Released Claims" will also include all claims released in the prior PayPal Class Action Litigation.

Settlement Agreement ¶ 1.30. It further provides that, at the time that final judgment is entered, "each of the Representative Plaintiffs and each of the Class Members will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged the Protected Persons from all Released Claims." *Id.* ¶ 5.1. Section 5 of the Settlement Agreement also includes a waiver "to the fullest extent permitted by law"[32] of the Class Members' rights under Cal. Civ.Code § 1542, which provides that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

While all existing disputes regarding chargebacks or disparate treatment of funding sources might reasonably fall within the scope of a general release of claims satisfied by a settlement of this action, a literal reading of the proposed release, specifically the language releasing "without limitation, any and all claims based upon any of the laws, regulations, statutes, or rules cited, evidenced and referenced by" the Second Amended Complaint, would encompass a vast expanse of potential claims that have no relation to the acts and practices at issue here. As written, the release would constitute a waiver of claims completely unrelated to this action that could be brought under any of the statutes or common-law theories that are alleged in the Second Amended Complaint. Though mindful of the "general policy favoring the settlement of litigation," the Court is forced to conclude that a general release that purports to strip millions of individuals of their rights to sue the defendants upon a wide range of offenses that have nothing to do with the misconduct alleged in the present action, for no more consideration than PayPal's agreement to make certain superficial changes to its website, is an offense to the principle of due process so egregious as to

---

**32.** Settlement Agreement ¶ 5.2.

render the proposed settlement untenable even at this preliminary stage. *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir.1982).

The Second Circuit has recognized that when reviewing the fairness of a proposed class action settlement, the court must take "special care ... to ensure that the release of a claim not asserted within a class action or not shared alike by all class members does not represent 'an advantage to the class ... [bought] by the uncompensated sacrifice of claims of members, whether few or many.'" *TBK Partners, Ltd. v. Western Union Corp.,* 675 F.2d 456, 461 (2d Cir.1982) (quoting *National Super Spuds,* 660 F.2d at 19). The *TBK Partners* court identified the limits to which a federal court is empowered to grant a general release of claims as part of a class action settlement, holding that the release of related claims is permissible so long as the released claims "would have to be based on the identical factual predicate as that underlying the claims in the settled class action." 675 F.2d at 460. In *National Super Spuds,* the plaintiffs brought a class action on behalf of all individuals who had purchased potato futures contracts on the National Mercantile Exchange and had liquidated those contracts between April 13 and May 7, 1976. While the federal class action was pending, one class member, Dexter Richards, brought a class action in New York state court on behalf of a class of individuals who held unliquidated potato futures contracts at the close of trading on May 7, 1976. Mr. Richards objected to the proposed settlement of the federal class action, which calculated the damages due to each class member only on the basis of liquidated futures, but purported to release all class members' claims regarding both liquidated and unliquidated contracts, on the ground that the contemplated release would bar his state court class action.[33] The district court approved the settlement, and the Second Circuit reversed, holding that the provision of the settlement agreement that "would bar Richards and others similarly situated from asserting claims, distinct from those represented by the class action plaintiffs, which depend not only upon a different legal theory but upon proof of further facts," while at the same time providing no additional compensation to holders of unliquidated contracts, was sufficient to establish that the named plaintiffs were not adequate representatives of the class members who held both liquidated and unliquidated contracts. *Id.* at 18 n. 7.

The general release proposed by the parties in this case raises all of the concerns about fairness and adequacy of representation that prompted the Second Circuit to reverse the district court's approval of the settlement agreement in *National Super Spuds,* and does so perhaps more powerfully because the relatively small group of Eligible Class Members represented by the named plaintiffs seeks to sacrifice the interests of a much larger group of PayPal account holders for its own benefit. The proposed settlement in *National Super Spuds* was unacceptable because it "would have given up a claim upon which the action had not been brought and with respect to which the interests of the plaintiffs and some of the class members were not identical." *In re Auction Houses Antitrust Litig.,* No. 00–CV–648, 2001 WL 170792, at *12 (S.D.N.Y. February 22, 2001) (discussing *National Super Spuds*). Here, the class representatives seek to advance their own interests by sacrificing the rights of the majority of Class Members, who stand to gain nothing of substantial value from the proposed settlement, for the benefit of the small group of Eligible Class Members, the relatively few individuals who may expect to receive an uncertain monetary award under the terms of the proposed settlement. This is the very situation that lies "[a]t the heart of [the Second Circuit's] concern ... that a class representative not sharing common interests with other class members would 'endeavor[ ] to obtain a better settlement by sacrificing the claims of others at no cost to themselves' by throwing the others' claims 'to the wind.'" *TBK Partners,* 675 F.2d at 462 (quoting *National Super Spuds,* 660 F.2d at 19 n. 10, 17 n. 16). This Court, which owes a " 'fiduciary' duty to the non-represen-

---

**33.** The *National Super Spuds* court noted defense counsel's admission that "the language of the settlement agreement had been framed ... with the precise purpose of barring Richards' New York state action." 660 F.2d at 15.

tative class members who were not party to the settlement agreement," will not permit the Eligible Class Members to bargain away the rights of other Class Members to assert legal claims unrelated to the present action against eBay and PayPal for the sake of the Eligible Class Members' own pecuniary interests. *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 262 (S.D.N.Y.1998) (quoting *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir.1987)); *see also Auction Houses*, 2001 WL 170792, at *12 (denying proposed settlement which would extinguish the rights of some class members to pursue claims in U.S. courts, holding that "there is no reason why some class members should be forced to give up something of value to enable other class members to benefit from a settlement made richer at their expense."). The bargain struck by the Settlement Agreement therefore will not be approved in its current form even at the preliminary stage.

### III. *Evaluation of Proposed Notice*

A. *Rule 23's Notice Requirements and the Parties' Proposed Plan of Notice*

Although the denial of the motion for class certification and the motion for preliminary approval of the proposed settlement necessarily means that the parties' joint motion for approval of the proposed notice plan must also be denied, the Court takes this opportunity to discuss several shortcomings in the proposed notice plan that would lead it to deny approval of the plan even if those motions were granted. Rule 23(c)(2)(B) states that, when certifying a class under Rule 23(b)(3), the court must "direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The required notice must include the following information:

- the nature of the action,
- the definition of the class certified,
- the class claims, issues, or defenses,
- that a class member may enter an appearance through counsel if the member so desires,
- that the court will exclude from the class any member who requests exclusion,

stating when and how members may elect to be excluded, and

- the binding effect of a class judgment on class members under Rule 23(c)(3).

Rule 23(c)(2)(B); *see also Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 338 (2d Cir.2006) (notice of a Rule 23(b)(3) class action "need only contain 'information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class.'") (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir.1977)). Rule 23 imposes particularly stringent notice requirements for Rule 23(b)(3) classes, and for good reason: "[s]ince 23(b)(3) classes, unlike 23(b)(2) classes, may result in the waiver of potential claims or defenses, due process requires that putative class members receive notice that their claims are being adjudicated." *Parker*, 239 F.R.D. at 334. Thus, Rule 23(c) imposes strict requirements both as to the substance of the requisite notice, and as to the method by which that notice must be disseminated to prospective class members.

The parties have submitted a proposed Notice of Pendency of Class Action and Proposed Settlement ("Proposed Notice," Settlement Agreement Ex. A), the substance of which satisfies the requirements of Rule 23(c). The proposed notice plan provides for notification of prospective class members as follows:

[PayPal shall transmit the Notice] via a single email to all Class Members who: (i) funded a PayPal transaction using their bank account after February 1, 2004; (ii) subsequently requested a reversal of the transaction through PayPal's prevailing Buyer Complaint Policy; and (iii) did not receive a full refund of their transaction. For all other Class Members, the Notice will not be sent via email but will be published via a hypertext link located within the website www.paypal.com, on the Account Overview page. . . . This link will be located in the "What's New" section of the Account Overview page, and will be located on the page for thirty days.

Settlement Agreement ¶ 4.6. In other words, the parties propose to provide individ-

ual notice, by electronic mail, only to prospective Eligible Class Members, and to notify the other Class Members only by means of a hypertext link on the user's Account Overview page, which will be accessible for one month. At oral argument, Michael Rhodes, counsel for PayPal, clarified that the contemplated electronic notification would not be transmitted via traditional electronic mail, but rather would be sent to each user's individual mailbox at "MyPayPal.com," which is accessible only by logging in to the user's PayPal account. Mr. Rhodes explained that because eBay and PayPal are frequent targets of email "spoofing" [34] scams, users might be inclined to distrust an email message purporting to be from eBay or PayPal regarding the settlement of a class action lawsuit, and suggested that users would more readily trust a message transmitted to their PayPal electronic mailboxes. *See* Tr. at 14–15.

B. *Analysis of the Proposed Plan of Notice*

■■■ The proposed notice plan falls short of the "best notice practicable" required for Rule 23(b)(3) class members for several reasons. First, while noting that there are remarkably few cases addressing this issue, the Court is not persuaded that notice to Eligible Class Members by electronic mail, though clearly more convenient and less expensive for the parties, is an adequate substitute for the traditional method of notifying prospective class members by first-class mail. "Historically, first class mailing has been utilized because it provides a controlled method by which individual notification can be provided through a reliable process which ensures that proper notice is received by the potential class members." *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 630 (D.Colo.2002). Moreover, notification by electronic mail creates risks of distortion or misleading notifica-

tion that are substantially reduced when first-class mail is used. The *Reab* court noted that

electronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court. Electronic mail heightens the risk that the communication will be reproduced to large numbers of people who could compromise the integrity of the notice process. In addition, email messages could be forwarded to nonclass members and posted to internet sites with great ease.

*Id.* at 630–631; [35] *but see Browning v. Yahoo! Inc.*, No. C04–01463 HRL, 2006 WL 3826714, at *8–9 (N.D.Cal. December 27, 2006) (approving an "extensive, multifaceted, and innovative" plan of email notification of a class action settlement as "particularly suitable in this case, where Settlement Class Members' allegations arise from their visits to Defendants' Internet websites, demonstrating that the Settlement Class Members are familiar and comfortable with email and the Internet."). Unlike *Browning*, however, notice by electronic mail is particularly inappropriate in this case because, as acknowledged by Mr. Rhodes, eBay and PayPal are popular targets of unscrupulous email spoofing schemes; as such, it is likely that many prospective Eligible Class Members would delete or ignore an electronic communication from PayPal that purports to address a class action settlement in which the recipient may be entitled to a monetary award. Although distributing notice via electronic mail to users' PayPal account mailboxes rather than their primary email addresses might mitigate the likelihood that the notice would be disregarded as inauthentic, that solution is unacceptable as it creates a significant possibility that

---

**34.** " 'Spoofing' means the practice of disguising a commercial e-mail to make the e-mail appear to come from an address from which it actually did not originate. Spoofing involves placing in the 'From' or 'Reply-to' lines, or in other portions of e-mail messages, an e-mail address other than the actual sender's address, without the consent or authorization of the user of the e-mail address whose address is spoofed." *Federal Trade Comm'n v. Westby*, No. 03–C–2540, 2004 WL 1175047, at *2 (N.D.Ill. March 4, 2004).

**35.** It must of course be acknowledged that, in this age of readily available scanning equipment, the difficulty in creating a PDF version of a paper letter and posting that image to the Internet is not much greater than that of posting an electronic notification, so the third factor identified by *Reab* is no longer of significant consequence, if in fact it was when *Reab* was decided in 2002.

at least some prospective Eligible Class Members will not receive the notice because they do not actively use their PayPal accounts or regularly check incoming messages on that account. Mr. Rhodes argued that electronic notice is appropriate in this case because PayPal's users are "on line people" who "transact with [PayPal] completely on line," but offered no reason to assume that every prospective Class Member is sufficiently sophisticated in the ways of online commerce that they would be likely to receive and read an electronic notification delivered to their PayPal mailbox. Tr. at 15. To the contrary, it seems quite likely that some prospective Class Members may have used PayPal's service only occasionally or may no longer be active PayPal users, and as such would be unlikely to receive the electronic notification contemplated by the parties.

The second fatal flaw in the Proposed Notice Plan is that the parties' proposal to notify all Class Members other than Eligible Class Members simply by means of a Summary Notice published on PayPal's website clearly fails to satisfy Rule 23's requirement that the parties *"must"* provide "individual notice to all members who can be identified through reasonable effort." [36] Fed.R.Civ.P. 23(c)(2)(B) (emphasis added). At oral argument, counsel for PayPal argued that individual notice to all prospective Class Members would be "economically ... not viable for us" because of the size of the prospective class and the financial burden that would be imposed should the parties be required to provide individual notice to each prospective Class Member. Unfortunately for the parties, Rule 23(b)(3) does not permit anything less than individual notice to each prospective Class Member, and the law is quite clear that concerns about the financial burdens of such notice cannot excuse noncompliance with that requirement. As the Supreme

Court has noted, "individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23." *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 175, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). In *Eisen,* the Court determined that, where "the names and addresses of 2,250,000 class members are easily ascertainable, and there is nothing to show that individual notice cannot be mailed to each ... Rule 23(c)(2) requires that individual notice be sent to all class members who can be identified with reasonable effort." *Id.* at 175–177, 94 S.Ct. 2140. The *Eisen* Court further noted that, although the cost of providing individual notice to a class of millions of individuals would impose a substantial financial burden on the plaintiff, "[t]here is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs." *Id.* at 176, 94 S.Ct. 2140; *see also Abrams v. Interco Inc.,* 719 F.2d 23, 30 (2d Cir.1983) (Friendly, J.) (characterizing *Eisen* as holding "that when members of the class can be identified through reasonable effort, individual notice is required, and that the expense of sending the notice must be paid by the plaintiffs no matter how disproportionate this would be to their prospective individual recoveries."); *Parker,* 239 F.R.D. at 334 (noting that *Eisen's* direction that individual notice must be sent to identifiable class members has "been strictly followed in the context of 23(b)(3) class certification," and denying class certification and approval of a proposed settlement agreement where, *inter alia,* the parties failed to update a seven-year-old list of the defendant's former customers for the purpose of providing notice to as many prospective class members as possible) (citing cases).[37] While it is true that "when class

---

**36.** Rule 23(c)(2)(A), which simply states that "[f]or any class certified under Rule 23(b)(1) or (2), the court may direct appropriate notice to the class," would permit the Court and the parties greater discretion to devise an appropriate plan of notice if the plaintiffs sought to certify a 23(b)(2) class of non-Eligible Class Members. However, as noted above, the parties do not propose to certify a Rule 23(b)(2) class. Therefore, all of the prospective Class Members, even the non-Eligible Class Members who stand to

receive only equitable relief through the proposed settlement, must be treated as Rule 23(b)(3) class members and are entitled to the "best notice practicable" as provided in Rule 23(c)(2)(B).

**37.** Although established precedent holds that the financial burden of providing notification to class members falls entirely on the plaintiffs, the parties have agreed that "PayPal will disseminate the Notice at its own expense and at no cost to

members' names and addresses may not be ascertained by reasonable effort, publication notice has been deemed adequate to satisfy due process," that is not the situation presented here. *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 107 (S.D.N.Y. 2007). Because PayPal has admitted that it has access to an "easily accessible list" of the names and addresses of each of its individual account holders, Rule 23 requires that each class member be provided with individual notice of the pending settlement. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 169 (2d Cir.1987) (holding that individual notice is not necessary for each of 2.4 million Vietnam veterans potentially exposed to Agent Orange where "no easily accessible list of veterans" existed, and "such a comprehensive list could [not] reasonably have been compiled.").

Finally, even if an electronic Summary Notice published on PayPal's website might be acceptable as one part of a larger notice plan directed at notifying as many prospective Class Members as possible about the pending settlement, the Court sees no reason why the publication of the Summary Notice should be limited to a mere thirty days. If the parties wish to use an electronic Summary Notice to partially discharge their obligation to provide the "best notice practicable" to prospective class members, the Summary Notice must be posted in a conspicuous place on PayPal's web site during the *entire* notice period—*i.e.*, from the date on which the Court grants preliminary approval of the settlement through the last date upon which Class Members' objections may be submitted.[38] For all of these reasons, the parties' proposed plan of notice fails to meet the requirements of Rule 23(c), and the Court is therefore unable to approve it.

### C. *Plausible Alternatives*

Although the Court has no intention of releasing the parties from Rule 23's requirement that they provide the best notice practicable to all prospective Class Members and is prepared to enforce the Supreme Court's ruling in *Eisen* that the financial burdens involved in providing individual notice to a large class do not mitigate Rule 23's requirements, it is nevertheless willing to entertain the suggestion that the opportunities for inexpensive mass communication provided by the Internet may provide some means of achieving the goals of Rule 23 by some less burdensome method than mailing individual notice to each of the one million or more prospective Class Members. The Court's primary concern with the notice plan proposed by the parties is that it does not produce the same degree of reassurance that every member of the proposed class will receive individual notice of the settlement that a plan of notification by first class mail would, but it may be possible to devise a system of electronic notification that would obviate that concern. If, for example, the parties were to send an electronic notice which required the recipient to take some affirmative step to acknowledge receipt and to waive entitlement to a formal notice delivered via first class mail, the Court would be inclined to consider permitting the parties to eliminate all Class Members who returned the electronic acknowledgment and waiver from the list of members to be served notice by the traditional method. The parties should be advised that the Court makes no guarantee that it would in fact approve such a system were it proposed in a revised settlement agreement, or that the proposal briefly sketched here is the only alternative system of notice that the Court would consider ap-

---

the Class or the Settlement Fund." Settlement Agreement ¶ 4.6. The Court is aware of no authority that would preclude the parties from shifting the financial burden of providing notice onto defendant PayPal by mutual consent.

**38.** The parties' submissions indicate that the plan of notice in the Prior PayPal Litigation included publication of a summary notice in three nationally-circulated publications: *USA Today, Newsweek,* and *People. See* Supp. Settlement Mem. Ex. C (Order Granting Preliminary Approval of

Proposed Settlement in Prior PayPal Litigation) ¶ 7. Although the Court does not have occasion to resolve the matter here, it notes that, depending on the extent to which the parties are ultimately able to send individual notice to each prospective Class Member, a process of mass publication in nationally-circulated media may be necessary to meet Rule 23's demand that the parties provide the "best notice practicable" to prospective class members in this case, as well.

proving. The Court simply wishes to encourage the parties to think more constructively and creatively about how the use of technology might facilitate achieving the goals of Rule 23 while eliminating unnecessary costs.

## *CONCLUSION*

The fundamental problem with the proposed class action settlement is that the parties seek to certify, and to obtain a broad release against, an unjustifiably broad Rule 23(b)(3) class, while providing notice and consideration appropriate only to a Rule 23(b)(2) class.[39] The Court sees no justification for certifying a Rule 23(b)(3) class that is broader than the Eligible Class Members and the credit card users who may have plausible claims for damages but are excluded from the definition of Eligible Class Members. The proposed plan of notice is also clearly insufficient under Rule 23(c), the Settlement Agreement's internally inconsistent provision for the plaintiffs' attorneys' fees is confusing at best, and the parties' failure to provide information about the Prior PayPal Litigation and PayPal's settlement with the state Attorneys General sufficient to permit this Court to understand the broader context in which this action arose creates substantial uncertainty about the validity of the consideration proposed for the non-Eligible Class Members. The parties' joint motions for class certification, preliminary approval of the settlement agreement, and approval of the proposed notice plan are therefore DENIED.

SO ORDERED.

---

**39.** The Court acknowledges that the general release and plan of notice proposed by the parties in this action are similar to the release and plan of notice approved by district court in the Prior PayPal Litigation. This Court is not bound by the rulings of the California court in the prior action, and in the absence of sufficient information regarding the details of that action and of any written opinion by the district court in that action explaining the rationale underlying its approval of the settlement agreement and plan of notice, the Court is unable to give the California court's rulings the consideration it might otherwise have and will abide by its own assessment of the requirements of Rule 23.